UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GNAT BOOTY MUSIC, et al.,

        Plaintiffs,

v.

CREATIVE CATERING OF WADHAMS, LLC,     Case No. 09-14746
                                                                        Honorable Julian Abele Cook, Jr.
        Defendant.

ORDER

        This lawsuit involves four claims by the Plaintiffs, Gnat Booty Music *et al.*, all of whom complain of wrongful acts of copyright infringement by the Defendant, Creative Catering of Wadhams, LLC ("Creative Catering").[1] In the complaint, they allege that this Defendant had, through its use of a hired disc jockey, publicly published or played some of their musical compositions without authority on November 14-15, 2008.[2]

        Currently before the Court is the motion for summary judgment that was filed by the

---

[1]According to the Plaintiffs, Janet Norager is the owner of Creative Catering and the designee for purposes of Fed. R. Civ. P. 30(b)(6), which reads: "[A private corporation that has been named as a deponent] must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . ."

[2]The Plaintiffs contend that the alleged copyright infringement occurred at a restaurant and bar in Kimball, Michigan (Angry Bull Steakhouse & Sports Bar ("Angry Bull")) which also presents music through customer-controlled jukeboxes, karaoke nights, radio broadcasts, and live performances. Creative Catering owns and manages the Angry Bull.

1

Plaintiffs on September 3, 2010.[3] In addition to seeking summary judgment relief, they have asked the Court to (1) enjoin Creative Catering from publicly performing designated copyrighted works, 17 U.S.C. § 502; (2) grant statutory damages to them under 17 U.S.C. § 504(c)(1) in the amount of $3,000 per infringement; (3) award costs and reasonable attorney fees to them as set forth in 17 U.S.C. § 505; and (4) include a provision within its judgment which declares Creative Catering's liquor stock to be an asset that is available for execution, subject to the permission of the Michigan Liquor Control Commission ("MLCC").[4]

I.

The Plaintiffs in this case are members of the American Society of Composers, Authors, and Publishers ("ASCAP"), to which they have granted the non-exclusive right to license non-dramatic public performances of their copyrighted musical compositions. ASCAP has more than 400,000 members, on whose behalf it licenses thousands of music users, including radio and television networks, commercial radio and television stations, restaurants, night clubs, and other establishments whose owners desire to lawfully perform copyrighted musical compositions in the ASCAP repertory. When such entities fail or refuse to obtain a license from ASCAP but nevertheless perform or play copyrighted material, their acts constitute an infringement upon the copyright interests of the members of the organization.

---

[3]Creative Catering has not filed a response to the Plaintiffs' dispositive motion as of this date.

[4]Based upon its review of this case, the Court is of the opinion that a resolution of the Plaintiffs' currently pending request for dispositive relief would not be significantly aided by oral arguments. Thus, it determines that the issues in controversy can be resolved fairly and equitably on the basis of the documents which have been submitted by the parties, and without the aid of any oral arguments by the parties. E.D. Mich. LR 7.1(f)(2).

In support of their motion, the Plaintiffs have proffered the declaration of Doug Jones, ASCAP's manager of litigation services, in which he describes the series of written and oral communications between the representatives of his organization and Creative Catering over a period of three years in an ultimately unsuccessful effort to resolve the infringement claims without resort to litigation. ASCAP, believing that copyrighted material was being utilized by Creative Catering without authorization at the Angry Bull, asked one of its representatives, Bethany Hanson, to conduct an investigation into the matter. Her investigation verified ASCAP's concern, in that four songs to which ASCAP members own the copyrights were performed during a four-hour period.[5] (Pls.' Mot. for Summ. J. at Ex. E). Creative Catering acknowledges that it cannot successfully challenge the Plaintiffs' accusation that the songs in question were played during the night of November 14-15, 2008. (Pls.' Mot. for Summ. J., Ex. D at Req. to Admit 11; *id.* at Req. to Admit 3-4; *id.* at Req. to Admit 1).

## II.

The entry of a summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). When evaluating a request for a summary judgment, the court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits - as well as the facts and inferences to be drawn therefrom - in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962); *Boyd*

---

[5]The songs in suit are (1) "Hey Ya!" performed by Outkast; (2) "Free Fallin'" performed by Tom Petty; (3) "Feel Like Making Love" performed by Kid Rock; and (4) "She Hates Me" performed by Puddle of Mudd.

*v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432 (6th Cir. 1987).

In order for a dispute to be genuine, it must contain evidence upon which a jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). Thus, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *Anderson*, 477 U.S. at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party makes its required showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). Importantly, the presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, quoted in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

In order to establish a claim for copyright infringement of a musical work by means of public performance in violation of 17 U.S.C. §§ 101 and 106(4), a claimant must prove (1) the originality and authorship of the compositions involved; (2) compliance with the formalities of the Copyright Act; (3) ownership of the copyright; (4) performance of compositions for profit; and (5) unauthorized performance. *Sailor Music v. IML Corp.*, 867 F. Supp. 565 (E.D. Mich.

1994); *see also Jobete Music Co., Inc. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077 (S.D. Ohio 2003).

The Court concludes that the Plaintiffs have clearly satisfied all of the elements that are required for the establishment of a copyright infringement claim. A certificate of registration which bears the seal of the Copyright Office constitutes *prima facie* evidence that the first three elements are satisfied, 17 U.S.C. § 410(c); *see also Sailor Music*, 867 F. Supp. at 568; *Jobete Music*, 285 F. Supp. 2d at 1082. The Plaintiffs have submitted the declaration of Mary Jenkins, an ASCAP paralegal who is in charge of maintaining copyright registration certificates and assignments for ASCAP members' songs. (Pls.' Mot. for Summ. J. at Ex. A). Attached to the declaration are copies of the copyright registration certificates and other relevant documents for the four songs in this lawsuit. The Court finds that this uncontroverted evidence satisfies the first three elements of the Plaintiffs' claims. *See Jobete Music*, 285 F. Supp. 2d at 1082 (accepting materially identical affidavit and proofs as *prima facie* evidence of first three elements).

The fourth element (i.e., public performance of the songs for profit) is established by the Hanson investigative conclusions and the inability of Creative Catering to contradict the allegations therein. Finally, the fifth element (i.e., unauthorized performance) is established by the Jones declaration and the attached proofs, as well as by Creative Catering's admission that it does not have any license to perform the songs in suit. Thus, the Plaintiffs have established all five of the required elements of their copyright infringement claims. Because there remains no genuine issue of a material fact and the Plaintiffs are entitled to judgment as a matter of law, the Court grants the Plaintiffs' motion for summary judgment.

IV.

Having established that Creative Catering did infringe upon the Plaintiffs' copyright, the Court now turns to the remaining remedies that have been requested.

First, the Plaintiffs have asked the Court to enjoin Creative Catering from playing or performing music to which any ASCAP member owns the copyright. The Copyright Act provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Where there is a "showing of past infringement and a substantial likelihood of future infringement," courts have not hesitated to grant permanent injunctions. *Jobete Music*, 285 F. Supp. 2d at 1092 (citation and internal quotation marks omitted); *see also, e.g.*, *Sailor Music*, 867 F. Supp. at 569-70. "Further, recognizing that plaintiffs in this type of action represented all of ASCAP's members, recent cases have enjoined defendants from performing any or all music in the ASCAP repertory." *Brockman Music v. Miller*, No G89-40650 CA, 1990 WL 132486 (W.D. Mich. 1990).

The Court is satisfied that there is a substantial likelihood that Creative Catering will continue to infringe the copyrights of the Plaintiffs and other ASCAP members without some form of judicial intervention (e.g., injunctive relief). There is no suggestion in the record that Creative Catering has ceased its operation of the Angry Bull or has in any way changed its procedures or policies with respect to the production of entertainment. Notwithstanding ASCAP's warnings and attempts to resolve the dispute without resort to litigation, Creative Catering permitted the claimed acts of infringement to occur. Inasmuch as Creative Catering has given this Court no reason to believe that it will cease its infringing activities, it is readily

apparent that the issuance of a permanent injunction will be necessary and appropriate under these circumstances.

Second, the Plaintiffs have asked the Court to award statutory damages in the sum of $3,000 per infringing song, constituting a total of $12,000 for the four songs which have been identified. The Copyright Act provides, in relevant part, that "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . , in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Courts have wide discretion in determining the appropriate amount, but are urged to consider three main factors: "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind whether wilful, knowing, or merely innocent." *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980). Because the statutory damages rule is designed to deter wrongful conduct, courts have routinely ordered damages well in excess of - and typically approximately three times - the amount the defendant would have paid if it had properly obtained a license. *Sailor Music*, 867 F. Supp. at 570 n.8 (quoting *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985)) ("The purpose of this de facto treble rule is to put defendants on notice that it costs less to obey the copyright laws than to violate them.'").

Here, the Plaintiffs have presented evidence which demonstrates that the total cost of the license fees (from the date when ASCAP initially informed Creative Catering of its claims of infringement to the present date) would have totaled $3,916.88. (Pls.' Mot. for Summ. J., Ex. C

at ¶ 13). The Court also notes that Creative Catering persisted in its refusal to purchase an ASCAP license, and in so doing, continued to infringe upon ASCAP members' copyrights. The Court concludes that the requested statutory damage award of $12,000 is appropriate because it properly accounts for the continued, wilful misconduct by Creative Catering and the amount that it saved and ASCAP lost (i.e., the nearly $4,000 in license fees), while still leaving an adequate margin to (1) account for the profits that it garnered while providing unauthorized entertainment to its customers and (2) serve the deterrent purpose of the Copyright Act. Thus, the Court will grant the Plaintiff's request for damages in the amount of $3,000 per infringement, for a total of $12,000.

Third, the Plaintiffs have requested the Court to award costs and reasonable attorney fees. In support of this request, they have submitted a declaration from their attorney who set forth his attorney fees ($10,698.75) and court-related costs ($1,211.57), all of which have been incurred thus far in prosecuting this action. In addition, ASCAP has expended $269.68 in its efforts to obtain evidence of the violations by Creative Catering.

Under the Copyright Act, the court has the discretion to award these costs and fees to the prevailing party in a copyright action. 17 U.S.C. § 505. The discretion of the court may be guided by its consideration of whether (1) a complex or novel issue of law justified the litigation of the case; (2) the defendant made a good faith attempt to avoid infringement; and (3) the defendant was an innocent, rather than wilful, infringer. *Sailor Music*, 867 F. Supp. at 570 (citing *Boz Scaggs*, 491 F. Supp. at 915). All of these factors weigh in favor of the Plaintiffs' request for an award of attorney fees. This case did not involve any complex or novel issues of law.  Moreover, this lawsuit is one that did not present any unsettled questions of fact or law. In

fact, Creative Catering has not presented the Court with any evidence whatsoever that would suggest that it made any effort to avoid the infringement about which the Plaintiff has complained or that its infringement was an innocent or an unknowing act. To the contrary, the Plaintiffs' proffer of the evidence demonstrates a pattern of deliberate indifference by Creative Catering to the rights of the copyright owners. The rejection of ASCAP's repeated entreaties "forced the Plaintiffs to engage lawyers, incur legal fees, and resort to the courts to enforce their rights." *Sailor Music*, 567 F. Supp. at 570. Thus, the Court concludes that an award of costs and attorney fees in the amount of $12,180 should be granted.

Finally, the Plaintiffs have requested the Court to include a provision within its order that will specify that - subject to the approval of the MLCC - Creative Catering's liquor stock shall be included among the assets which will be subject to execution in the collection of the judgment. The Plaintiffs acknowledge that - even without this provision - they would not be limited as to which of the Creative Catering assets would be subject to execution during its enforcement of the judgment. Fed. R. Civ. P. 64(a) ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). However, under Michigan law, the MLCC retains "the sole right, power, and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within this state, including the manufacture, importation, possession, transportation and sale thereof." Mich. Comp. Laws § 436.1201(2).

The Plaintiffs report that they have been advised by the MLCC that it will not grant permission to execute against liquor stocks without language in a court order which expressly

9

authorizes such a taking. Recognizing that "the defendants' inventory of liquor stock is clearly the most valuable and portable asset they control" (Pls.' Mot. for Summ. J. at 16), the Court concludes that the Plaintiffs' request is warranted because it will likely make the execution of this order a successful endeavor.

IV.

For the reasons that have been set forth above, the Court (1) grants the Plaintiffs' motion for summary judgment; (2) permanently enjoins Creative Catering from publicly performing any copyrighted works that are owned by ASCAP members; (3) awards statutory damages to the Plaintiffs under 17 U.S.C. § 504(c)(1) in the amount of $3,000 per infringement (totaling $12,000); (4) grants the sum of $12,180 to the Plaintiffs in the form of attorney fees and costs; and (5) directs that those assets, which are subject to execution in the collection of this judgment, shall include Creative Catering's liquor stock, subject to the approval of the Michigan Liquor Control Commission.

IT IS SO ORDERED.

Dated: January 6, 2011  
      Detroit, Michigan

s/Julian Abele Cook, Jr.  
JULIAN ABELE COOK, JR.  
United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 6, 2011.

                                              s/ Kay Doaks  
                                              Case Manager